[Civ. No. 4813. Third Appellate District.—May 8, 1933.]

In the Matter of the Estate of CHARLES A. ROSS, Deceased. ELWOOD ROSS et al., Respondents, v. LEAH ROSS, Appellant.

King & King for Appellant.

W. T. Belieu for Respondents.

KING, J., *pro tem.*—The proceeding is a will contest.

Charles A. Ross and Leah Ross were husband and wife for many years. They owned farm property near Biggs on which he resided and she conducted a restaurant in the town of Biggs.

Mrs. Ross instituted an action against her husband for divorce February 26, 1931, and the summons was served March 2, 1931. The testimony also showed that their troubles arose from the fact that Ross was a heavy periodic drinker of intoxicating liquor and when he was under the influence of liquor he abused her. March 9, 1931, they had a conference at the restaurant in Biggs over their affairs,

after which he went out to the farm. March 10, 1931, she received through the mail two sheets of paper inclosed in an envelope bearing the postmark of March 9th, on which sheets was written in lead pencil:

"March 9–31. Dear Leah. I have been putting off writing you as I did not know what to say, and do I know now? I want to talk with you 'Oh, so bad'. I know you think I am a devil but Leah just stop and think, is there two. Will you come out and have a talk with me before you get the derty divorce that I do not want. If so let me know and I will gladly send someone in after you any p. m. you say"

"Dear Leah: I have not slept for at least one month. You think it is boose but I am going crazy and I know it. Would like to talk to you as there is no one I want to give this *damed* place to but you. So if you are interested come out and see me. Chas. It is not going to be long now."

She did go to see him, but continued the prosecution of the divorce action, resulting in an interlocutory decree rendered April 13, 1931, after default of defendant.

June 19, 1931, Ross died and Mrs. Ross presented the above two sheets of paper to the court asking its admission to probate as the holographic will of the deceased.

A contest was filed by the brothers and sister of deceased, and the contest was heard by a jury, which rendered a verdict upholding the document as the will of deceased.

Contestants filed notice of a motion to set aside the verdict and enter judgment for the contestants. This motion was granted and the court filed findings and judgment adjudging that the two sheets of paper introduced by proponent did not constitute a holographic or any other character of will of said deceased; that said two sheets of paper did not indicate or show any testamentary intent or any intention by him to make a will or dispose of his property by last will and testament; and that said letters show no testamentary intent or disposition by him to leave his property by last will and testament to Leah Ross; and that said deceased died intestate; and that proponent Leah Ross is not entitled to letters of administration with the will annexed. From this judgment the appeal is taken.

The point especially stressed by the appellant is that "The order granting a motion for judgment notwithstanding the verdict is erroneous for the reason that such a motion

can only be granted where the moving party before the verdict has requested the court to direct a verdict in his favor.'' Appellant claims that no such motion for a directed verdict was made, and if the record sustains this contention the judgment must be reversed. (*Estate of Easton*, 118 Cal. App. 659 [5 Pac. (2d) 635]; *Estate of Caldwell*, 216 Cal. 694 [16 Pac. (2d) 139].)

The record in regard to what respondent specifies as a motion for a directed verdict is contained in the reporter's transcript, and we here reproduce the essential portions thereof. After proponent concluded her case counsel for contestants announced: ''I have a motion to make outside of the hearing of the jury,'' and the jury was excused; counsel then stated that proponent's showing was not sufficient to make out a *prima facie* showing for the court upon which to submit any questions of fact to the jury. He then continued: ''Of course under the peculiar circumstances of this case, I do not consider that there are many questions of fact for this jury to pass on. I deem it almost entirely and exclusively a question for this court to decide under the law as to whether or not the instrument which has been presented to this court as the last will and testament of the deceased is not such in fact, I further take the view that any extraneous evidence or oral testimony which has been introduced in support thereof, is entirely inadmissible on the ground that the paper produced and presented is not of that character of uncertainty which would justify the court taking oral testimony in explanation thereof. And secondly, admitting all of the testimony in support of the document, it is my contention as a matter of law that this instrument does not indicate or show testamentary intent. Assuming that the letter was written and assuming all of the claims of the proponent with respect to the letter, still I say in the nature of a demurrer to the testimony it is not sufficient to indicate a testamentary intention. It will be observed that this proposed will comes to the court in the form of two sheets of paper, one of which appears to have been dated but not signed and the other appears to have been signed but not dated; and it is our contention of course after an examination of the witnesses that this is not one instrument. I say that for the reason that the first sheet or the sheet that I

will call the first sheet, being the one dated, was written in a hand which is totally dissimilar to the second sheet; the handwriting is different and one is dated and not signed and one is signed and not dated.

"The Court: Would not that indicate that he intended it all to be one paper?

"Mr. Belieu: I am assuming for the purpose of the argument probably that the instruments came in the same envelope. . . . For the purposes of my argument I will assume that the letter came in the same envelope and I think that is about the only question to be submitted to the jury, and after having assumed that, I wanted to take up with Your Honor some of the cases which involve the proposition of holographic wills so you can see how the holdings of the court have been with respect thereto. . . . The language of the paper, 'So if you are interested come and see me,' that is an overture, irrespective if she did go or did not go and what they said or did there, the authorities hold that this will must stand or fall by its own language, and that will is not testamentary, in fact it was merely an overture. Even assuming that the language is testamentary in character, and I claim it is not—." The argument is continued by Mr. Belieu and was replied to by proponent's counsel, the further argument not being reported. Counsel then admits for the purpose of argument that the alleged will is one continuous instrument. The court then said to counsel for proponent: "Show me in this will of yours where he gave anything to anybody. . . . Mr. Belieu, we have this jury here . . . we have to pay them anyway, and suppose we go on with the case and let them show what they want to show about this will and take up the legal questions later.

"Mr. Belieu: That is all right but for my enlightenment, do you think there are very many questions of fact for the jury to decide?

"The Court: The only question is whether or not . . . Did this man intend this as a will, and by the will to give this woman that place? Is that a fact whether he did or did not? Can't they find on the question of intention?

"Mr. Belieu: I thought that was solely a question for the court.

"The Court: Mrs. King has gone to a great expense in getting this jury here and I don't have to abide by their

decision, so, let us do what they say, bring the jury in and you put on your defense. Of course the judge is the thirteenth juror.

"The Court: The twelve jurors are here now and proceed, Mr. Belieu.

"Mr. Belieu: I suppose after this jury retires to deliberate and return such verdict as it may return, then the matter will be in the hands of the court for consideration.

"The Court: Yes, it will be." The jury then returns.

"Mrs. King: Before we start I would like to know what the issues are so I will know what to meet. . . .

"Mrs. King: There is no issue for the jury now, the rest of it is for the court.

"Mr. Belieu: That is what I have been trying to say.

"The Court: I have been trying to get out of this but you have a jury here.

"Mrs. King: I have no objection to it going to the jury. . . .

"The Court: Go ahead, Mr. Belieu, with your witness."

The foregoing extracts from the record comprise what appears with regard to a motion for a directed verdict. It will be observed that it contains no direct motion by contestant for a directed verdict, and no direct refusal by the court to grant one. It does show, however, that contestants were trying to keep the decision of the case from the hands of the jury, and a direction by the court for contestant to proceed with his witnesses. It seems further to show that all parties conceded that the paper presented to the court was in the handwriting of the deceased and that the proponent admitted there was no issue remaining for the jury.

However, issues were presented to the jury, which found that the paper was entirely written, dated and signed by the hand of the deceased; that it was his intention to give his place to Leah Ross; that the two sheets were considered by decedent to constitute one letter; that they were both written at a time when decedent was in good health; that he was a man of intelligence and business experience; that both sheets were mailed to Leah Ross at one time; that the two sheets were wholly written at the same time; that the deceased did wholly write, date and sign the two sheets in his own handwriting; and finally, "We, the jury, find

that proponent's exhibit No. One was intended by the deceased to be his last will and testament.''

The court in its finding upon the motion for judgment notwithstanding the verdict explicitly found that the contestants moved the court for a judgment of nonsuit after proponent had rested her case. This finding, however, is not of much aid to this court in determining the fact of a motion for a directed verdict, because (aside from the technical fact that the court's finding denominates it a motion for ''nonsuit'' instead of a motion for a ''Directed Verdict''), in a similar case the court held that the record must prevail over the recital. (*Estate of Caldwell, supra*.)

The findings by the court adopt the answers to the special issues made by the jury except the last general finding and the portion of the jury's verdict to the effect that it was the intention of decedent to want or will to give his place to Leah Ross. These two answers to special issues the court refused to adopt, finding that they ''are generally in favor of the proponent and are beyond the province of the jury.''

As to the showing of a motion for a directed verdict it will be observed that counsel for contestants did not in so many words apply to the court for such a direction. He did say: ''I have a motion to make.'' Then the jury was excused and counsel stated that ''this showing is not sufficient to make out a *prima facie* showing for the court to submit any questions of fact to the jury upon''. He stated further, ''I do not consider that there are many questions of fact for this jury to pass on. I deem it almost entirely and exclusively a question for this court to decide under the law as to whether or not the instrument which has been presented to this court as the last will and testament of the deceased is not such in fact. . . . Assuming that the letter was written and assuming all of the claims of the proponents with respect to the letter, still I say in the nature of a demurrer to the testimony it is not sufficient to indicate a testamentary intention.''

The court is inclined to hold that the foregoing language indicates that counsel for contestants making the statements he did, and as he says: ''In the nature of a demurrer to the testimony,'' did present a motion in the nature of a motion for a directed verdict, or for a nonsuit. The court then, by its remark, ''Let us do what they say, bring the jury in

and you put on your defense, . . . Proceed, Mr. Belieu,'' undoubtedly denied the motion. This action by the court, if it be considered that a motion was made, was erroneous, and in such condition, the court had a right to give the judgment which it did give notwithstanding the verdict of the jury. The court's finding that the said two sheets of paper showed no testamentary intent is undoubtedly correct. The paper bears no semblance of a will and was not intended by the deceased to make testamentary disposition of his property.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1933.